---

## OPINION TO THE GOVERNOR.

Under the provisions of section 3 of article X of the constitution of the State, the following opinion of the justices of the Supreme Court was delivered to the governor, February 6, 1902, in the matter of

## THE ELECTION OF JUSTICES OF THE SUPREME COURT.

The expressions "the annual session for the election of public officers" in constitution of Rhode Island, Art. X, § 4, and "The next annual election" in section 5 of said article are synonymous.

The election of a judge of the Supreme Court at such time, whether to fill an additional place or to fill a vacancy, however caused, is for the term specified in section 4; and the power to fill vacancies "until the next

annual election" can only be exercised at other sessions of the General Assembly than the session at which the election of public officers takes place and when the vacancy is occasioned by one of the causes mentioned in section 5.

Article XI, section 7, of amendments to the constitution of Rhode Island, providing that if a person is elected by the General Assembly to fill a vacancy in any office after the beginning of the term he shall hold the office for the remainder of the term, and if he is elected to fill an office under the provisions of section 3 of said article before the term of office has commenced he shall hold the office for the full term, has no effect upon the provisions of section 5 of article X, as it applies only to offices which have a definite term and not to the office of justice of the Supreme Court.

Article XI, section 12, of amendments annuls article III of amendments and substitutes therefor the provisions contained in section 1 of said article XI, "There shall be a session of the general assembly at Providence, commencing on the first Tuesday of January in each year." An election of a judge at that session, whether to fill a vacancy or to make an addition to the number of judges in the court, is for the normal term.

Article X, section 5, now applies only in the case of the election of a judge to fill a vacancy at a session of the General Assembly specially called by the governor under article VII, section 7, of the constitution after the final adjournment of the annual session, or by the acting governor under Article XI, section 4, of the amendments.

PROVIDENCE, R. I., February 6, 1902.

*To His Excellency Charles Dean Kimball, Governor of the State of Rhode Island and Providence Plantations :*

We have received from your excellency the following questions, viz. :

*First.* A chief justice and an associate justice of the Supreme Court were elected by the General Assembly in grand committee on May 29 and on May 30, 1900, respectively, to fill vacancies created by the resignation of a former chief justice on May 29, 1900, and the election of an associate justice to be chief justice on said May 29, 1900. For what terms were such chief justice and associate justice then elected ?

*Second.* What effect, if any, do sections 7 and 12 of article XI of amendments to the constitution have upon the provisions of section 5 of article X of the constitution ?

To the first question we have the honor to reply as follows :

The provisions of the constitution relating to the terms of office and election of judges of the Supreme Court are contained in sections 4 and 5 of article X, as follows :

"SEC. 4.  The judges of the supreme court shall be elected by the two houses in grand committee.  Each judge shall hold his office until the place be declared vacant by a resolution of the general assembly to that effect ; which resolution shall be voted for by a majority of all the members elected to the house in which it may originate, and be concurred in by the same majority of the other house.  Such resolution shall not be entertained at any other than the annual session for the election of public officers ; and in default of the passage thereof at said session, the judge shall hold his place as is herein provided.  But a judge of any court shall be removed from office if upon impeachment he shall be found guilty of any official misdemeanor.

"SEC. 5.  In case of vacancy by death, resignation, removal from the state or from office, refusal or inability to serve, of any judge of the supreme court, the office may be filled by the grand committee until the next annual election, and the judge then elected shall hold his office as before provided," etc.

Section 4 provides for what may be called the normal term of office of the judges of the Supreme Court, which is from the time of election and qualification until death, resignation, or removal by vote of the two houses or by impeachment.

Section 5 provides for a shorter term in cases of vacancy arising from certain causes, which is from the time of election and qualification until the next annual election ; but provides in effect that the judge elected at the annual election shall hold his office for the normal term.

That this construction is the only sensible one to be placed upon the words " the judge then elected shall hold his office as before provided," will, we think, be apparent if we consider the effect of a contrary interpretation.  It is clear that only two terms of office are recognized by the constitution—

one, the normal term, as above defined, and the other until the next annual election. Now, if these words in section 5 have any other meaning than we have assigned to them, they must import an election to fill a vacancy until the next annual election, and then another election to fill the vacancy, which has recurred, until the next annual election, and then another, and so on indefinitely. But this would make the place of a judge of the Supreme Court an office to be filled annually. We cannot believe the people intended to have the court permanently composed of two classes of judges, viz. : those elected from time to time to fill original places created by increasing the number of judges in the court, who would hold office for the term specified in section 4 ; and those elected to fill vacancies occurring under section 5, who would hold office only for a year or less. The provision for the shorter term of section 5 was evidently intended to be temporary and exceptional.

The convention which framed the constitution had before it two other drafts of constitutions, in many respects similar to the form which it adopted. These were the "Peoples Constitution," voted for by many of the people of the State and claimed to be the fundamental law by a large party of citizens ; and the "Land-holders' Constitution," adopted by a convention in November, 1841, but not accepted by the people.

By the Peoples Constitution the normal term of office of the justices of the Supreme Court was from year to year, and until removal by vote of the General Assembly at the May session.

By the Land-holders Constitution the normal term is fixed in language almost identical with that of the present constitution.

In both these drafts provision is made for filling vacancies, and a comparison of the terms of these sections with the one which went into effect will bring out very clearly the meaning of the latter.

## "PEOPLES CONSTITUTION.

### "ARTICLE XI.

"3.  The justices of the supreme court shall be elected in joint committee of the two houses, to hold their offices for one year, and until their places be declared vacant by a resolution to that effect, which shall be voted for by a majority of all the members elected to the house in which it may originate, and be concurred in by the same vote of the other house without revision by the governor.  Such resolution shall not be entertained at any other than the annual session for the election of public officers, and in default of the passage thereof at the said session, the judge or judges shall hold his or their place or places for another year.  But a judge of any court shall be removable from office, if, upon impeachment, he shall be found guilty of any official misdemeanor.

"4.  In case of vacancy by the death, resignation, refusal or inability to serve or removal from the state of a judge of any court, his place may be filled by the joint committee until the next annual election ; when, if elected, he shall hold his office as herein provided."

## "THE LAND–HOLDERS CONSTITUTION.

### "ARTICLE XI.

"SEC. 3.  The justices of the Supreme Judicial Court shall be elected in Grand Committee of the two houses to hold their offices until their places be declared vacant by a resolution of the General Assembly to that effect ; which shall be voted for by a majority of all the members elected to the house in which it may originate and be concurred in by the same majority of the other house.  Said resolution shall not be entertained at any other than the annual session for the election of public officers ; and in default of the passage thereof at said session the judge or judges shall hold his or their places as is herein provided.  But a judge of this, or of any other court inferior to the same, shall be removable from office if,

upon impeachment he shall be found guilty of any official misdemeanor.

"SEC. 4. In case of vacancy by the death, resignation, refusal or inability to serve, or absence from the State of a judge of this court, his place may be filled by the grand committee until the next annual election ; when the judge elected shall hold his office as before provided."

In these drafts, as well as in the constitution, the "filling of the place" or "office" is contrasted with the "election" at the May session.   The filling of the place is temporary ; the election is permanent for the full term.   In this connection the words of Chief Justice Ames, in *Taylor* v. *Place*, 4 R. I. 324, 352, are instructive.   He says : "To meet the new exigency the judges of the Supreme Court, who under the charter had, like all other officers, been of annual appointment by the general assembly, were endowed with a firmer tenure—that of good behavior—unless removed by the joint vote in separate houses, of a majority of those elected to the general assembly in each, passed at the May Session, when the members came to the assembly fresh from the people, and before legislative factions could have time to be formed, or to grow unscrupulous in their action against the judges," and again, page 353, "The plain import of all this when compared, as it should be, to understand it, with the state of things it was intended to remedy, is that the people of the state when they adopted this constitution, desired to have in their court of last resort, so far as such better constitutional provision would enable it, an educated and independent judiciary *with a comparatively stable tenure of office*, and with a jurisdiction which, while it could not be diminished by the legislature so as to be powerless to resist it, might be increased by it to any extent which the wants of the people might require."

We conclude, then, that any election of a judge of the Supreme Court at the time called in section 4 " the annual session for the election of public officers," and in section 5 " the next annual election," which expressions have the same meaning, whether to fill an additional place then or pre-

viously created, or to fill a vacancy, however caused, is for the term specified in section 4, and that the power to fill vacancies " until the next annual election " can only be exercised at other sessions of the General Assembly than the session at which the election of public officers takes place and when the vacancy is occasioned by one of the causes mentioned in section 5.

What was meant by the annual election clearly appears when we note that the constitution, as adopted in November, 1842, contained the following provisions as to sessions of the General Assembly :

" Article IV, section 3. There shall be two sessions of the general assembly holden annually, one at Newport on the first Tuesday of May, *for the purposes of election* and other business, the other on the last Monday of October, which last session shall be held at South Kingstown once in two years and the intermediate years alternately at Bristol and East Greenwich ; and an adjournment of the October session shall be holden annually at Providence."

It need hardly be said that the election here spoken of is an election by the General Assembly ; not the election by the people. When in the constitution the popular election is referred to it is clearly designated as in article IV, section 17, where, speaking of bills to create corporations, it is said they " shall be continued until another election of members of the general assembly shall have taken place," etc.

It was not an unwarranted assumption from article IV, section 3, that the election of a judge of the Supreme Court for the full term of the office, like the election of any of the officers required by the constitution, might be had at any time during the May session or any continuation or adjournment thereof. The election of general officers in grand committee seldom, if ever, occurred on the first day of the session ; and what might be done on the second day might be done on any subsequent day of the same session, however long continued.

Accordingly we find that the first judges of the Supreme Court established under the constitution were elected at the May session, 1843, on May 5th, the fourth day of the session,

and were never re-elected ; and at the June session, 1843, the number of associate justices was increased, and the additional judge was then elected and never re-elected.

So we find that so long as two sessions were provided for, no judge who was elected at the May session was ever re-elected ; and every judge who was chosen at the October session, or at the adjourned session at Providence, was re-elected at the next May session.

In November, 1854, the following amendment to the constitution was adopted :

"Article III.   There shall be one session of the general assembly holden annually, commencing on the last Tuesday in May at Newport, and an adjournment from the same shall be holden annually at Providence."

While this article seems to have done away with the distinction between the functions to be exercised by the General Assembly at Newport and those to be exercised at Providence by obliterating the separate October session and making the Providence session simply an adjournment of the Newport one, yet, for the purposes of election of judges, the distinction between the two sessions has always been preserved by the General Assembly, with one exception.

The three judges who were elected November 2, 1854, at the October session, 1854, were all re-elected at the May session, 1855.   This precedent came strictly under the old law, for the abolition of the two sessions did not take effect till the next May, 1855, when the one session began at Newport.

At the May session, 1856, the General Assembly passed a resolution of adjournment, from May 13 to June 23, "in continuance of the present May session."   At this session, June 26, the grand committee elected Samuel Ames chief justice, and he was never re-elected.   This was the first election of a judge after the two sessions were abolished.

[1] The next vacancy occurred June 10, 1862, and it was filled at a special August session, called by the governor, and the

---

[1] The statement in the text was based upon the printed official schedules. By reference to the manuscript journal of the General Assembly it appears that the justice referred to was re-elected at the May Session, 1863. W. W. D.

judge then elected served until March 1, 1864, without re-election, thus assuming that the provision as to filling vacancies had been abrogated.    Since that time, and before the May session, 1900, two judges elected at May sessions to fill vacancies were re-elected at the succeeding May sessions ; ten chosen at other than May sessions to fill vacancies were re-elected at succeeding May sessions ; one elected at a May session to fill a vacancy was not re-elected ; one elected at a January session, and two elected at May sessions as additional judges, were not re-elected.

In the absence, hitherto, of any declaration of the Assembly in their votes in grand committee or otherwise, or of the court directly construing the provisions of the constitution, we may consider the re-election of certain judges as made out of abundant caution.    In no case has the Assembly assumed to elect in May a different person from the one chosen to fill the vacancy at a previous session, and hence the validity of the first election has never been contested.

It is our opinion, then, that in May, 1900, the General Assembly in grand committee, when they elected a chief justice to fill a vacancy caused by resignation, and then proceeded to elect an associate justice to fill the vacancy caused by the promotion of the former associate justice, elected each of them to hold office as provided in section 4 of article X of the constitution, and not " until the next annual election."

In answer to the second question, our opinion is as follows :

Section 7, article XI, of amendments, simply provides that if a person is elected by the General Assembly to fill a vacancy in any office after the beginning of the term, he shall hold the office for the remainder of the term ; if he is elected to fill an office under the provisions of section 3, before the term of office has commenced, he shall hold the office for the full term ;  and in either case the incumbent shall hold the office until his successor is qualified.    This section has no effect upon the provisions of section 5 of article X, as it applies only to offices which have a definite term.

Section 12 of article XI of amendments annuls article III of amendments, and substitutes therefor the provision on the

same subject contained in section 1 of the new article : "There shall be a session of the General Assembly at Providence, commencing on the first Tuesday of January in each year."

As we have seen in discussing the first question, section 5 of article X of the constitution recognized the fact that there were then established two annual sessions of the General Assembly, one for the purposes, primarily, of election, the other for general business. At the first, a judge of the Supreme Court might be elected for the normal term ; and at that session any judge might be removed ; at the other session, if a vacancy occurred it could only be filled until the next election session. The new article abolishes the second session absolutely and leaves the single session, at which any regular election of general officers must take place. The single session, at Providence, commencing on the first Tuesday of January, takes the place of the May session at Newport formerly provided for, and an election of a judge at that session whether to fill a vacancy or to make an addition to the number of judges in the court, is necessarily for the normal term.

The only possible application of the old provision, in the new condition of things, is to permit the choice of a judge to fill a vacancy at a session of the General Assembly specially called by the governor, under article VII, section 7, of the constitution, after the final adjournment of the annual session, or by the acting governor under section 4 of the new article, until the next annual election ; that is to say—until the General Assembly meets at its regular annual session and proceeds to elect an incumbent for the normal term. As section 5 of article X has not been specifically repealed or annulled, we are of opinion that it still applies in such a case.

Mr. Chief Justice Stiness and Mr. Justice Blodgett being interested in the questions proposed, express no opinion thereon.

PARDON E. TILLINGHAST,
GEORGE A. WILBUR,
HORATIO ROGERS,
WILLIAM W. DOUGLAS,
EDWARD CHURCH DUBOIS.